# DECLARATION

I, Justin B. Trogdon, Task Force Officer with the Drug Enforcement Administration (DEA), Greensboro, North Carolina, hereby state pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have been a Task Force Officer with DEA since April 2019, and I am currently assigned to the DEA, Atlanta Field Division, Greensboro Resident Office. I am also a Deputy Sheriff with the Randolph County Sheriff's Office, currently holding the rank of Detective Sergeant, and have been employed as a law enforcement officer since 2004. In 2005, I was assigned to criminal investigations, with the primary responsibilities to investigate drug violations, murder, robberies, rape, property crimes and other related felonious crimes. In 2009, I was assigned to the Bureau of Alcohol, Tobacco, Firearms, and Explosives, as a Violent Crimes Task Force Officer, assigned to the Greensboro Field Office. I worked in that capacity for eight years, investigating complex multi-defendant cases, violent crimes, violations of federal firearms laws, and related drug offenses that occurred in the Middle District of North Carolina. I have a Bachelor of Science degree in Criminal Justice from Western Carolina University. I am currently enrolled at East

Carolina University, pursuing a Master of Science in Criminal Justice and Administration of Justice, expected completion, December 6, 2021. I have received over two thousand one hundred (2,100) hours of law enforcement related training, to include training in the purchase of drugs/narcotics through various street level operations which involved the use of confidential sources. I have also worked numerous cases in which an undercover officer and/or a confidential source, acting at my direction or in an undercover capacity, has purchased illegal substances. I have attended a Police Law Institute class, which focused on police search and seizure. I am a Field Training Officer for the Randolph County Sheriff's Office, a North Carolina Training and Standards Certified General Instructor, and have been responsible for training new law enforcement officers since February 2010. I have obtained my Advanced Law Enforcement Certificate from the North Carolina Sheriff's Training and Standards Commission. I have participated in hundreds of cases that involved the violation of state and federal laws that govern controlled substances and related crimes. In the time that I have been a Law Enforcement Officer, I have written at least two hundred (200) search warrants and participated either directly or indirectly in over five hundred (500) search warrants. I have made over one hundred fifty (150) drug arrests that resulted in both state and federal prosecutions. I have purchased cocaine hydrochloride, cocaine base (also known as crack cocaine), marijuana, heroin, ecstasy, various prescription pills, and methamphetamine "ICE" during these investigations. Because of my training and experience, I am aware of the different types of controlled substances and the ways in which controlled substances are packaged, distributed, and sold. I have also seized U.S. currency as part of these investigations, and I

am familiar with how drug proceeds are packaged, concealed, and/or commingled to prevent detection by law enforcement.

3. This declaration is submitted in support of a Verified Complaint of Forfeiture for $11,410.00 in U.S. currency, seized on May 11, 2021 from David Perez Robledo (ROBLEDO) in Asheboro, North Carolina.

4. Based on the investigation described below, there is probable cause to believe that $11,410.00 in U.S. currency is subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

5. The facts and circumstances set forth in this Declaration are based upon information provided by other law enforcement officers and my own personal knowledge and experience. Because this declaration is being submitted for a limited purpose, I am not including all the facts and information which I have learned or obtained during the course of this investigation.

6. On May 11, 2021 Randolph County Sheriff's Office Deputy Julian and Sergeant Hogan were working in conjunction with Detective Long on an ongoing narcotics investigation into ROBLEDO. ROBLEDO is suspected of distributing marijuana, heroin, and prescription pills in and around Randolph County, North Carolina.

7. During the early morning hours of May 11, 2021, Deputy Julian observed ROBLEDO operating a black 2011 GMC Terrain SUV, NC registration EDF5681, VIN# 2CTALMEC4B6307689, near 3219 Old NC Highway 49 Asheboro, NC 27205. Deputy Julian obtained the North Carolina registration plate number and ran it through a law enforcement database, which showed the vehicle to be registered to Tania Judith Jones and

ROBLEDO. Deputy Julian also observed that the male driver fit the picture of ROBLEDO in the law enforcement database. The law enforcement database further showed that ROBLEDO's driver's license had expired and that there was an an active order for arrest for failure to appear for earlier drug charges. As a result, Deputy Julian conducted a traffic stop.

8. Upon approaching the vehicle from the passenger side, Deputy Julian introduced himself and advised ROBLEDO that the reason for the stop was an expired driver's license. Upon request to produce his driver's license, ROBLEDO provided a Maryland driver's license. Deputy Julian noted ROBLEDO's hands were shaking as he fumbled to retrieve his driver's license from his wallet.

9. Deputy Julian asked ROBLEDO for the registration for his vehicle, which ROBLEDO provided. On the registration, Deputy Julian noted ROBLEDO's was the only name listed. While reviewing the provided driver's license and registration, Deputy Julian asked ROBLEDO about his travel plans. ROBLEDO stated that he was travelling from home on Golden Meadow Road in Asheboro to work in Franklinville. He said he did not plan to make any stops on the way to work.

10. At this point, Deputy Julian requested that ROBLEDO exit his vehicle and accompany him back to his patrol vehicle. As ROBLEDO walked to the rear of his own vehicle, Deputy Julian asked him if he carried any weapons on his person. ROBLEDO responded that he did not. ROBLEDO agreed to allow Deputy Julian to frisk him for weapons. After doing so, Deputy Julian requested that ROBLEDO stay seated in the patrol vehicle while he ran necessary checks and prepared a warning ticket for the expired driver's

4

license. While performing these checks, Deputy Julian engaged in casual conversation with ROBLEDO, asking him where he worked. ROBLEDO informed Deputy Julian that he worked for Sapona Manufacturing as a mechanic. During their conversation, Deputy Julian noted ROBLEDO exhibited a number of indicators, including heightened levels of anxiety, trembling hands, and rapid breathing, which indicated, in Julian's training and experience, that ROBLEDO was possibly concealing criminal activity.

11. As a result of the ongoing narcotics investigation and the noted behavioral indicators, Deputy Julian asked Sergeant Hogan to deploy K9 Bronx on the vehicle ROBLEDO was operating. During the sniff, Sergeant Hogan noted that K9 Bronx displayed a positive alert to the vehicle.

12. K9 Bronx is a 2-year-old Belgium Malinois, a breed specifically selected for their keen senses and ability to be trained to detect the odor of controlled substances. K9 Bronx has proved his reliability using his senses to locate narcotic training aids and controlled substances in the field. Under the direction of nationally certified canine trainers, K9 Bronx and his handler Detective Sergeant Hogan successfully completed a 120-hour basic canine handler course at High Point Canine Solutions (HPCS) on May 16, 2019. Under the supervision of HPCS, the handler and his K9 had to successfully complete a written test and a practical field test where it was required to locate unknown hides of cocaine, heroin and methamphetamine. Through his training, K9 Bronx has been imprinted on the narcotic odors of heroin, cocaine, marijuana/hashish, and methamphetamines. Since being placed into service, K9 Bronx has reliably detected narcotics that have been concealed inside packages, parcels, vehicle exteriors, and building interiors. K9 Bronx is

certified through the National Narcotic Dog Detector Association. This certification was conducted in Dothan, Alabama in February 2021. During this training and certification, K9 Bronx was commanded to search a series of rooms and positively alert by coming to an ultimate and final indication of sit when finding an odor of a controlled substance.

13. K9 Bronx is trained to "passively alert," exhibiting a physical reaction which ultimately ends in him coming to a sitting and/or laying position when he detects the odor of narcotics. He also exhibits various mental and physical reactions which are noticeable to Sergeant Hogan, which include changes in his behavior such as becoming possessive of an area, refusal to leave an area where the odor of narcotics is detected and changes in his breathing rate and sniffing patterns.

14. Sergeant Hogan has documented that when K9 Bronx alerts, narcotics have been present in an overwhelming majority of the cases and training deployments.

15. Detective Sergeant R.S. Hogan has been a sworn Law Enforcement Officer in the State of North Carolina for twelve years. Sergeant Hogan was employed at Asheboro Police Department for three years and eleven months and was assigned to Patrol. He was hired at the Randolph County Sheriff's Office in October 2013 and has been continuously employed there since. Sergeant Hogan has been assigned to a specialized division that carried titled various things such as Breaking and Entering Task Force, Community Crimes Task Force and the current title of Urban Interdiction Team. This is Sergeant Hogan's current assignment. Detective Sergeant Hogan has been to numerous training classes and seminars related to various topics. Sergeant Hogan has attended approximately 900 hours of training to include various patrol development, proactive traffic and drug enforcement,

property crimes investigations, search warrant and legal update classes and numerous hours in the specialized field of canine handling. Sergeant Hogan has achieved his Intermediate Law Enforcement Certificate during his employment at the Randolph County Sheriff's Office.

16. Sergeant Hogan is currently a canine handler and has been assigned a canine since the fall of 2014. Sergeant Hogan was first assigned "Odie," a bloodhound breed, used exclusively for tracking people, and currently still uses this K9 on an as-needed basis. K9 Odie is a single purpose tracking dog currently being used to track lost or innocent subjects, such as dementia patients or lost children.

17. In the spring of 2019, Sheriff Seabolt expanded the canine program at the Randolph County Sheriff's Office and assigned Sergeant Hogan to oversee the expansion. K9 Bronx was assigned to Sergeant Hogan as a result. After successful completion of certification and training, Sergeant Hogan and K9 Bronx were entered into service with the Randolph County Sheriff's Office.

18. Once Deputy Julian issued the warning ticket to ROBLEDO, he notified him that there was an Order for Arrest issued for him and that a search would be conducted based on K9 Bronx's positive alert to the vehicle.

19. Deputy Julian searched the interior of the vehicle, starting with the front passenger area and moving to the rear trunk area. Upon searching the rear trunk area, he lifted the spare tire compartment lid from the floor and located a plastic bag containing U.S. currency wrapped in an aluminum foil package. He also located a black toboggan

7

containing bulk U.S. currency. In Deputy Julian's training and experience, narcotics traffickers will package and attempt to hide currency in this manner.

20. Deputy Julian asked ROBLEDO about the currency, to which ROBLEDO replied the small package, in the amount of $1,000.00, belonged to his mother. The bulk currency in the toboggan amounted to $4,000.00 and was money he earned selling toilet paper and detergent at the 311 Flea Market in Sophia, North Carolina. When asked, he informed Deputy Julian the last time he was at the flea market was Sunday.

21. At approximately 7:05 a.m., Deputy Julian photographed and removed the bulk U.S. currency, then placed it on the windshield/hood of his patrol car. Sergeant Hogan then placed the currency in his patrol vehicle as witnessed by Deputy Julian to be transported to the Randolph County Sheriff's Office Special Operations Building ("Special Operations Building" and "Special Operations") for evidence processing. Sergeant Hogan also requested a tow truck through 911 communications. Randleman Towing arrived, retrieved the vehicle, and, as instructed by Deputy Julian, followed him to the Special Operations Building where a more thorough search of the vehicle would be conducted.

22. Pursuant to the Order for Arrest, ROBLEDO was arrested, transported by Lieutenant Wilson to Special Operations, and processed.

23. An additional search of ROBLEDO's person revealed various fraudulent identification cards, an iPhone 12 pro with a multicolored case, two rubber banded bundles of bulk U.S. currency in the breast pockets of his shirt, and a black Alcatel cell phone.

24. Once the vehicle arrived at Special Operations, Sergeant Short drove the vehicle into the building to be searched further. Upon searching the vehicle, Deputy Julian

located a black weatherproof, magnetic box on the underside of the vehicle between the front passenger door and rear passenger door, which contained approximately 150 grams of suspected marijuana. Sergeant Short advised Deputy Julian that he located a round pink tablet imprinted K56. In Sergeant Short's training and experience, the tablet was Oxycodone Hydrochloride, a Schedule II controlled substance.

25. Upon the bulk U.S. currency's arrival at the Special Operations building, Deputy Julian constructed a "blind" hide, which consisted of new paper bags, some of which contained the bulk currency, while others were empty. Sergeant Short placed five empty brown bags on the floor approximately four feet apart, two of which contained the bulk U.S. currency seized from the vehicle. Sergeant Hogan waited ten minutes, then deployed K9 Bronx for a free air sniff of the paper bags. Sergeant Hogan advised K9 Bronx displayed a positive alert to the bags that contained the currency.

26. The currency seized from ROBLEDO's person by Deputy Julian was placed in one brown paper bag along with three empty paper bags. Sergeant Hogan advised Deputy Julian that he again waited for ten minutes before deploying K9 Bronx for a free air sniff of the paper bags. Sergeant Hogan informed Deputy Julian that K9 Bronx displayed a positive alert to the paper bag containing the currency.

27. While detained at the Randolph County Sheriff's Office, ROBLEDO agreed to speak with Detective Long and Detective Carter without an attorney present and signed an adult waiver of rights. During questioning, ROBLEDO stated again that the currency located in his vehicle during the search belonged to him and his mother.

28. ROBLEDO also stated that he was still in communication with a known drug trafficker residing in Mexico known as Pelusa. ROBLEDO told detectives that Pelusa contacted him on May 9, 2021 and asked him to help transport a large amount of narcotics. He claimed he told Pelusa that he would not be able to do this.

29. ROBLEDO admitted to detectives that he placed the marijuana located during the search of his vehicle under the vehicle to hide it.

30. Detective Long read back the statement ROBLEDO provided. ROBLEDO agreed it was correct, signed it and was charged accordingly with Possession With Intent to Sell and Distribute Marijuana, Maintaining a Vehicle/Dwelling/Place for Controlled Substance, and Simple Possession of a Schedule II Substance and transported to Randolph County Jail.

31. The same day, based on the information communicated to him by Sergeant Hogan about the search of ROBLEDO's vehicle, Detective Long sought and obtained a search warrant for ROBLEDO's residence. Randolph County Sheriff's Office Detectives Long, Carter, Sakamura, Santiago, Short, Linthicum, Sergeant Ellis and Captain Sapp were present during the execution of the search warrant. There were no other persons located inside the residence.

32. During the search, Detective Short located a black plastic box secured to the frame of a box truck belonging to ROBLEDO parked in the driveway. The plastic box contained several bags containing suspected marijuana. The plastic box was very similar in appearance and location on the vehicle to the box located during the traffic stop of ROBLEDO on the same date.

33. During the search of the residence, the following items were located and seized: digital scales, five blister packs containing blue pills with VGR100 printed on them, DVR from camera system, a Smith and Wesson Airweight 38 special revolver (serial number CPE8630), five 38 caliber rounds, multiple 380 auto rounds, paper writings, and multiple plastic baggies.

34. On Tuesday, May 25, 2021, the U.S. currency was transported to State Employees Credit Union, Archdale, NC, for an official count and subsequently transferred by certified check (Check Number 023801) to the United States' Marshal Service. The Official count of U.S. currency seized was $11,410.00, which was documented and verified by an official count sheet.

35. DEA adopted the seizure of $11,410.00 in U.S. currency and began administrative forfeiture proceedings. Notice of the forfeiture proceeding was posted on the internet at www.forfeiture.gov for a period of thirty days commencing on July 12, 2021 and ending on August 10, 2021. On August 2, 2021, DEA received claims to the defendant currency from ROBLEDO.

36. In his claim and petition, ROBLEDO claimed that the defendant currency was earned through the sale of three of his vehicles on April 25, 2021, April 29, 2021 and May 1, 2021. ROBLEDO submitted handwritten sales receipts in support of this claim. This claim contradicts his statement to Randolph County Sheriff's Office detectives on the date of seizure.

37. Because claims were filed, the administrative process was terminated and the seizure was referred to the U.S. Attorney's Office for judicial forfeiture.

## CONCLUSION

35. Based upon the foregoing, I am of the opinion that there is probable cause to believe that the $11,410.00 in U.S. currency was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to such an exchange, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

This the 23rd day of November, 2021.

Justin B. Trogdon
Task Force Officer
Drug Enforcement Administration